**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
JAMES E. CUNNINGHAM, SR.      :    Civ. No. 3:21CV00273(SALM)
                              :
v.                            :
                              :
FRANCESCO LUPIS, et al.       :    January 24, 2022
                              :
------------------------------x
```

**RULING ON MOTION FOR PRELIMINARY INJUNCTION**

Self-represented plaintiff James E. Cunningham, Sr.

("plaintiff") is an inmate in the custody of the Connecticut

Department of Correction ("DOC") currently confined at

MacDougall-Walker Correctional Institution ("MacDougall").[1] After

initial review, the remaining defendants in the case are Dr.

Francesco Lupis, Colleen Gallagher, and Rudy Alvarez, all of

whom are alleged to be current or former employees of DOC, and

APRN Chena McPherson. Plaintiff has filed a motion for

preliminary injunctive relief [Doc. #12], and two separate

---

[1] The Court may take judicial notice of matters of public record.
See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir.
2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D.
Conn. 2020) (taking judicial notice of BOP inmate location
information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386
(E.D.N.Y. 2002) (taking judicial notice of state prison website
inmate location information). The Court takes judicial notice of
the Connecticut DOC website, which reports that plaintiff was
sentenced to a term of imprisonment on February 18, 2014, that
has not expired. See Connecticut State Department of Correction,
Inmate Information,
http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=2
33982 (last visited Jan. 19, 2022).

motions seeking a hearing on that motion. [Docs. #13, #15].[2]

Defendants oppose the motions, asserting that plaintiff has not

satisfied the requirements for issuance of injunctive relief.

See generally Doc. #58.

For the following reasons, plaintiff's Motion for

Injunction [**Doc. #12**], Motion to Hear Injunction [**Doc. #13**], and

Amended Motion to Hear Injunction [**Doc. #15**] are **DENIED**.

## I.    Background

Plaintiff brought this action asserting multiple claims

pursuant to 42 U.S.C. §1983, the Americans with Disabilities

Act, the Rehabilitation Act, and state law. After initial

review, the remaining claims are:

- Count 2 against Dr. Lupis for deliberate indifference to serious medical needs relating to testosterone deficiency in violation of the Eighth Amendment.

- Count 2 against Dr. Lupis for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") related to his alleged deliberate indifference to serious medical needs relating to plaintiff's testosterone deficiency.

---

[2] Plaintiff generally addresses the motions to "all defendants." Doc. #12 at 1, 2. Defendant McPherson, however, is not employed by the Department of Correction. See Doc. #50 at 2. She seeks to have the motions denied as to her because the care she provided is not referenced in the motions, and she cannot provide plaintiff the requested relief. See generally id. In reply, plaintiff states that he did not intend these motions to apply to McPherson. See Doc. #52 at 1 ("[T]his injunction does NOT include APRN, McPherson[.]"). Accordingly, the Court construes the motions are being directed solely to the other defendants. The Court will use the term "defendants" in this ruling to refer solely to defendants Lupis, Gallagher, and Alvarez.

- Count 3 against Dr. Lupis and McPherson for deliberate indifference to serious medical needs relating to plaintiff's diabetes in violation of the Eighth Amendment.

- Count 3 against Dr. Lupis and McPherson for NIED and IIED related to the alleged deliberate indifference to serious medical needs relating to plaintiff's diabetes.

- Count 5 against Dr. Lupis and Gallagher for deliberate indifference to the need for exercise in violation of the Eighth Amendment.

- Count 5 against Dr. Lupis and Gallagher for NIED and IIED related to the alleged deliberate indifference to plaintiff's need for exercise.

- Count 5 against Alvarez alleging retaliation in violation of the First Amendment.

- Count 7 against Dr. Lupis alleging retaliation in violation of the First Amendment.

Doc. #74 at 13-14.

In the motions now before the Court, plaintiff makes wide-ranging allegations relating to his medical care, many of which are beyond the scope of the remaining claims in the case. For example, in the motion for preliminary injunction, plaintiff states that Dr. Lupis has canceled medications and his medical diet, refuses to control or adjust his insulin levels, refuses to send him back to various specialists for pain control and orthopedic follow-up examinations, and fails to monitor his blood pressure, blood sugar levels, and edema. See generally Doc. #12 Plaintiff contends that his requests for care for orthopedic, vascular, diabetic, endocrine, musculoskeletal,

pulmonary, thyroid issues, skin infections, pain, and neuropathy
have been ignored. See generally id.

In his first motion seeking a hearing, plaintiff states
that he complained about Dr. Lupis to District Administrator
Rodriguez and, in retaliation, Dr. Lupis threatened to take away
plaintiff's wheelchair. See generally Doc. #13 Plaintiff states
that he has used a wheelchair for five years due to his obesity
and issues with his knees, hip, and rotator cuff. See generally
id. He seeks return of the wheelchair. See generally id.

In the amended motion for hearing, plaintiff repeats his
demand for a wheelchair, asserting that he requires the
wheelchair because he has had three knee surgeries that did not
correct issues with a torn ACL in his right knee, suffers from
degenerative joint disease in most joints and osteoarthritis in
his hip, and suffers from severe diabetic neuropathy causing
numbness in his feet and hammer toes. See generally Doc. #15.
Plaintiff also alleges that Dr. Lupis reduced his neuropathic
pain medication and refuses to honor Plaintiff's five-day-per-
week gym pass. See generally id. Dr. Lupis also allegedly
reduced plaintiff's daily insulin dose. See generally id.

Plaintiff asks the Court

> to put him under the care of an independent health care
> provider, doctors specialists not under the control of
> (doc) or the other defendants so they will not interfere
> with Cunninghams health care to protect (doc), all
> defendants because (doc) employees, healthcare, all

defendants will not go against their bosses in fear of
retaliation from them.

[Plaintiff] requests to be examined by independent
doctors, specialists, tests, etc, about everything
listed in complaint and for all defendants and (doc) be
ordered to follow all independent outside doctors,
specialists, pain management orthopedic,
endocrinologist, vascular, but not limited to so
Cunningham does not get worse or lose of limb or death.

Doc. #12 at 2 (sic).

## II.  Standard for Preliminary Injunctive Relief

Interim injunctive relief "is an extraordinary and drastic

remedy, one that should not be granted unless the movant, by a

clear showing, carries the burden of persuasion." Grand River

Enter. Six Nations Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)

(citation and quotation marks omitted).

A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits,
that he is likely to suffer irreparable harm in the
absence of preliminary relief, that the balance of
equities tips in his favor, and that an injunction is in
the public interest.

Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation and

quotation marks omitted). "A showing of irreparable harm is the

single most important prerequisite for the issuance of a

preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec

Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation and quotation

marks omitted).

"[I]n seeking preliminary injunctive relief, Plaintiff

cannot rest on mere arguments; he must proffer admissible

evidence that clearly demonstrates his entitlement to the

requested relief." Howe v. Burwell, No. 2:15CV00006(CR), 2015 WL

4479757, at *6 (D. Vt. July 21, 2015). With respect to prison

conditions, federal law narrowly confines the scope of available

preliminary relief.

> Preliminary injunctive relief must be narrowly drawn,
> extend no further than necessary to correct the harm the
> court finds requires preliminary relief, and be the
> least intrusive means necessary to correct that harm.
> The court shall give substantial weight to any adverse
> impact on public safety or the operation of a criminal
> justice system caused by the preliminary relief and
> shall respect the principles of comity set out in
> paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. §3626(a)(2).

"[T]he court's task when granting a preliminary injunction

is generally to restore, and preserve, the status quo ante,

i.e., the situation that existed between the parties immediately

prior to the events that precipitated the dispute." Asa v.

Pictometry Intern. Corp., 757 F. Supp. 2d 238, 243 (W.D.N.Y.

2010); see also Transamerica Rental Finance Corp. v. Rental

Experts, 790 F. Supp. 378, 381 (D. Conn. 1992) ("It is well

established in this Circuit that the purpose of a preliminary

injunction is to preserve the status quo between two parties.").

"Because mandatory injunctions disrupt the status quo, a

party seeking one must meet a heightened legal standard by

showing 'a clear or substantial likelihood of success on the

merits.'" N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,

883 F.3d 32, 37 (2d Cir. 2018) (quoting N.Y. Civil Liberties

Union v. N.Y.C. Transit Auth., 684 F.3d 286, 294 (2d Cir.

2012)). "A mandatory preliminary injunction 'should issue only

upon a clear showing that the moving party is entitled to the

relief requested, or where extreme or very serious damage will

result from the denial of preliminary relief.'" Cacchillo v.

Insmed, Inc., 638 F.3d 401, 406 (2d Cir. 2011) (quoting

Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master

Fund Ltd., 598 F.3d 30, 35 n.4 (2d Cir. 2010)); see also Tom

Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 34 (2d

Cir. 1995) (A party seeking a mandatory injunction must make a

"clear or substantial showing" of likelihood of success on the

merits of his or her claim. (citation and quotation marks

omitted)).

A "district court has wide discretion in determining

whether to grant" preliminary injunctive relief. Moore v.

Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 511 (2d Cir.

2005). "In the prison context, a request for injunctive relief

must always be viewed with great caution so as not to immerse

the federal judiciary in the management of state prisons."

Fisher v. Goord, 981 F. Supp. 140, 167 (W.D.N.Y. 1997); see also

Farmer v. Brennan, 511 U.S. 825, 846-47 (1994). The Supreme

Court has repeatedly stated that "plaintiffs seeking preliminary

relief [must] demonstrate that irreparable injury is likely in

the absence of an injunction." Winter v. Natural Res. Def.
Council, Inc., 555 U.S. 7, 22 (2008). "Issuing a preliminary
injunction based only on a possibility of irreparable harm is
inconsistent with our characterization of injunctive relief as
an extraordinary remedy that may only be awarded upon a clear
showing that the plaintiff is entitled to such relief." Id.

A plaintiff's request for preliminary injunctive relief
must relate to the claims in the operative complaint. See, e.g.,
De Beers Consol. Mines Ltd. v. United States, 325 U.S. 212, 220
(1945) (finding preliminary injunction inappropriate that "deals
with a matter lying wholly outside of the issues in the
suit[]"); McMillian v. Konecny, No. 9:15CV00241(GTS), 2018 WL
813515, at *2 (N.D.N.Y. Feb. 9, 2018) ("[T]he relief sought by a
plaintiff in a motion for a temporary restraining order or
preliminary injunction must relate to the claims of the
plaintiff's complaint."); Torres v. UConn Health, No.
3:17CV00325(SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29,
2017) (preliminary injunctive relief "not warranted" where "the
motion is unrelated to underlying claims[]" in complaint).

## III. Discussion

Plaintiff bears the burden of establishing that irreparable
harm is likely if the Court denies his request for immediate
injunctive relief. In response to plaintiff's motions,
defendants have submitted copies of plaintiff's medical records

and the declaration of Dr. Cary Freston. <u>See</u> Docs. #58-1, #73.
Defendants contend that plaintiff has not demonstrated that he
will suffer irreparable harm if the motions are denied, nor a
likelihood of success on the merits of his claims. <u>See</u> <u>generally</u>
Doc. #58.

A.   <u>Requests for Hearing</u>

Plaintiff has filed a motion entitled "emergency motion to
hear injunction against Dr. Lupis" Doc. #13 (sic), and another
entitled "amendment #1 to emergency motion to hear
injunction[.]" Doc. #15 (sic). In spite of their titles, neither
motion actually addresses the question of whether a hearing is
necessary on plaintiff's request for preliminary injunctive
relief. Rather, both submissions appear to simply provide
additional allegations against Dr. Lupis and others.

On the current record, and for the reasons stated in the
remainder of this Ruling, there is no need for a hearing on
plaintiff's motion for preliminary injunction. <u>See</u>, <u>e.g.</u>,
<u>Jarecke v. Hensley</u>, 552 F. Supp. 2d 261, 264-65 (D. Conn. 2008)
(denying motion for preliminary injunction without a hearing
where plaintiff had failed to show a clear likelihood of success
on the merits); <u>Wall v. Constr. & Gen. Laborers' Union</u>, 80 F.
App'x 714, 716 (2d Cir. 2003) ("[T]he district court did not
abuse its discretion in denying plaintiffs' motion for a

preliminary injunction without a hearing[.]"). Accordingly, plaintiff's motions for hearing [**Docs. #13, #15**] are **DENIED.**

      B.    <u>Allegations Outside the Scope of Remaining Claims</u>

As noted, many of the allegations in plaintiff's submissions do not relate to the claims remaining in this case. The Court dismissed, on initial review, all claims relating to deliberate indifference to orthopedic issues relating to plaintiff's knee, elbow, and shoulder, <u>see</u> Doc. #17 at 32-34; the failure to provide adequate pain management or adequately service and maintain various pieces of his medical equipment, <u>see</u> <u>id.</u> at 34-35; the failure or refusal to have him seen by specialists, and refusal to comply with the recommendations of specialists, <u>see</u> <u>id.</u> at 35. To the extent the preliminary injunctive relief sought relates to the dismissed claims, including any orthopedic issues, pain management, assignment of a wheelchair, and cell assignment, the requests are **DENIED.**

      C.    <u>Demand for Treatment by Outside Providers</u>

Plaintiff's request for injunctive relief, though accompanied by dozens of pages of rambling and wide-ranging claims, is a simple one: He asks the Court to order the DOC to provide him with medical care by providers outside of the DOC medical system, who are "not under the control of" DOC or any defendant. Doc. #12 at 2.

The Court is required, in evaluating a prisoner's request
for injunctive relief, to "give substantial weight to any
adverse impact on public safety or the operation of a criminal
justice system caused by the preliminary relief" requested. 18
U.S.C. §3626(a)(2). The federal courts must be forever mindful
that "within prison walls, even relatively simple changes in
procedure can have far-reaching security and other
consequences." Carter v. Fagin, 363 F. Supp. 2d 661, 666
(S.D.N.Y. 2005). "Congress has specifically instructed federal
courts to be highly conscious of the unique security needs of
prisons and, accordingly, to be deferential to the judgment of
administrators who have unique expertise." Williamson v. Maciol,
839 F. App'x 633, 638 (2d Cir. 2021).

    Plaintiff's submissions make clear that he disagrees with
the treatment decisions of the medical staff assigned to his
care, particularly Dr. Lupis. He contends that he must receive
treatment from outside providers because DOC providers "will not
go against their bosses[.]" Doc. #12 at 2. This is the sole
rationale offered by plaintiff for the need to seek outside
care. Notably, the defendants remaining in this matter are not
"bosses." Defendant Lupis is plaintiff's "primary care
physician[.]" Doc. #58-1 at 3. Alvarez is "a gym teacher at
MacDougall who was responsible for the exercise programs." Doc.
#17 at 20 (footnote omitted). Gallagher is alleged to be the

"Program Director, Quality Improvement of Health and Addiction Services" who provides "medical care services to inmates at MacDougall[.]" Doc. #1 at 4.

Dr. Cary Freston, who is the Acting Regional Medical Director of DOC, has reviewed plaintiff's medical records, and offered his opinion. See Doc. #58-1. There is no indication in plaintiff's submissions that Dr. Freston would fear contradicting Lupis, Alvarez, or Gallagher; if anything, it appears that Dr. Freston is of higher rank and position in the DOC than any of the defendants. Dr. Freston has provided a sworn statement indicating that plaintiff "is receiving all appropriate medical care for these conditions and has continuously received routine and necessary care by his providers." Doc. #58-1 at 4. After a thorough discussion of plaintiff's medical treatment, Dr. Freston concluded: "In my opinion, the current medical care being provided to the Plaintiff reduces the risk of worsening of, his various medical conditions, and there is no imminent sign or indication of risk of harm or death." Id. at 17.

Defendants have submitted extensive evidence revealing that plaintiff has been receiving consistent medical care and attention. See Doc. #58-1 (affidavit of Dr. Cary), Doc. #73 (excerpts of plaintiff's medical records). That evidence strongly rebuts plaintiff's conclusory allegations that he is

not receiving adequate care. Plaintiff has not demonstrated that
he will suffer irreparable harm if he is not treated by outside
physicians. Defendants have presented the sworn testimony of a
physician who has opined that the care plaintiff is receiving is
appropriate; plaintiff has offered nothing but speculation that
an outside doctor would see it differently. "Speculative, remote
or future injury is not the province of injunctive relief."
Tolbert v. Koenigsmann, No. 9:13CV01577(LEK), 2015 WL 7871344,
at *2 (N.D.N.Y. Dec. 4, 2015); see also City of Los Angeles v.
Lyons, 461 U.S. 95, 111-12 (1983).

Plaintiff has also failed to demonstrate a likelihood of
success on the merits on the issue of the adequacy of his
medical treatment. "It is well-established that mere
disagreement over the proper treatment does not create a
constitutional claim. So long as the treatment given is
adequate, the fact that a prisoner might prefer a different
treatment does not give rise to an Eighth Amendment violation."
Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Indeed,
"a prison inmate has no independent constitutional right to
outside medical care." Tindal v. Goord, No. 04CV06312(DJL), 2006
WL 2583273, at *1 (W.D.N.Y. Sept. 6, 2006) (citation and
quotation marks omitted). "At best, Plaintiff has established a
pattern of disagreement over the course of his treatment and
takes issue with Defendants' medical judgment. This evidence

does not form the basis of a deliberate indifference claim and is insufficient to establish the likelihood of success on the merits." Tolbert v. Koenigsmann, No. 9:13CV01577(LEK), 2016 WL 3349317, at *4 (N.D.N.Y. June 15, 2016); see also Lewal v. Wiley, 29 F. App'x 26, 28 (2d Cir. 2002) ("Lewal's desire to be examined by an independent specialist, in the face of the FCI's conclusion that further testing is unwarranted, is nothing more than a dispute between patient and doctor over the proper diagnosis for his symptoms, and is therefore not cognizable.").[3]

In sum, plaintiff's disagreement with the treatment decisions by defendants is insufficient, in the face of evidence that he is receiving adequate care, to show a risk of irreparable harm or a likelihood of success on the merits. Furthermore, plaintiff has not demonstrated that the relief he seeks, treatment by outside providers, is reasonable or necessary in the circumstances.

---

[3] The Court notes that plaintiff has not offered any evidence that would override the express statutory mandate that the Court "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief" requested. 18 U.S.C. §3626(a)(2). Plaintiff's demand would require that he be physically transported to an outside medical facility for treatment, even for routine matters. This raises obvious security concerns. It would require that plaintiff be treated differently than all other inmates, though many inmates suffer from similar medical conditions, which could cause unrest and disruption.

## IV.   <u>Conclusion</u>

Plaintiff's Motion for Injunction [**Doc. #12**], Motion to Hear Injunction [**Doc. #13**], and Amended Motion to Hear Injunction [**Doc. #15**] are **DENIED.**

It is so ordered this 24th day of January, 2022, at New Haven, Connecticut.

                                    ___/s/_____
                                    Hon. Sarah A. L. Merriam
                                    United States District Judge