### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-----------------------------X
                             :
JAMES E. CUNNINGHAM, SR.     :    Civil No. 3:21CV00273(SALM)
                             :
v.                           :
                             :
FRANCESCO LUPIS, COLLEEN     :
GALLAGHER, RUDY ALVAREZ,     :
and CHENA MCPHERSON          :    July 28, 2022
                             :
-----------------------------X
```

### <u>RULING ON MOTION FOR SUMMARY JUDGMENT [Doc. #108]</u>

Self-represented plaintiff James E. Cunningham, Sr., ("plaintiff"), a sentenced inmate at MacDougall-Walker Correctional Institution, brings this action relating to events occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC").[1]

Pursuant to Federal Rule of Civil Procedure 56(a), defendant Chena McPherson ("defendant" or "McPherson") moves for summary judgment on the ground that "plaintiff has failed to

---

[1] The Court may take judicial notice of matters of public record. <u>See, e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reports that plaintiff is a sentenced inmate. <u>See</u> Connecticut State Department of Correction, <u>Inmate Information</u>, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=233982 (last visited July 27, 2022).

exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ('PLRA') 42 U.S.C. §1997e(1)." Doc. #108 at 1 (footnote omitted). For the reasons set forth below, defendant McPherson's Motion for Summary Judgment [**Doc. #108**] is **DENIED**.

I.    PROCEDURAL BACKGROUND

The Court sets forth only that background necessary to the resolution of McPherson's Motion for Summary Judgment.

Plaintiff brought this action on March 3, 2021, naming 31 defendants. See Doc. #1. On that same date, plaintiff filed a Motion for Leave to Proceed in forma pauperis, which Judge Thomas O. Farrish granted on March 5, 2021. See Docs. #2, #7. On October 6, 2021, Judge Jeffrey A. Meyer, the then-presiding Judge, conducted an initial review of the Complaint. See Doc. #17. As relevant here, Judge Meyer permitted Count 3 of the Complaint to proceed against McPherson for deliberate indifference to serious medical needs relating to plaintiff's diabetes. See id. at 41. Judge Meyer also allowed plaintiff's state law claims against McPherson "to proceed ... to the extent that they are based on the same facts and conduct as alleged as a basis for the remaining federal law claim[] against" defendant McPherson. See id. at 42. On October 26, 2021, this case was transferred to the undersigned. See Doc. #24.

2

Plaintiff filed several motions directed to Judge Meyer's Initial Review Order, including, in pertinent part, a "Motion to Fix Defaults[,]" Doc. #69, which the Court construed as a motion seeking leave to file an Amended Complaint. See generally Doc. #74. On January 14, 2022, the Court denied this motion, and reiterated, as relevant here, that "Count 3 against ... McPherson for deliberate indifference to serious medical needs relating to plaintiff's diabetes[]" would proceed. Id. at 13. The Court also permitted "Count 3 claims for [negligent infliction of emotional distress] and [intentional infliction of emotional distress] to proceed against ... McPherson related to the alleged deliberate indifference to serious medical needs relating to plaintiff's diabetes." Id. at 14.

On December 16, 2021, the Court entered a Scheduling and Case Management Order that ordered "each defendant [to] determine whether there is a basis to dismiss this action, in whole or in part, for any reason, including but not limited to ... failure to exhaust administrative remedies[.]" Doc. #57 at 4. The Scheduling and Case Management Order further directed:

> If a defendant believes that there is a sound basis to assert that the matter should be dismissed for failure to exhaust administrative remedies, but that such a question must be determined by a motion for summary judgment rather than a motion to dismiss, defendant may file a preliminary motion for summary judgment on or before March 1, 2022, on that issue.

Id. at 4-5 (emphasis removed). On February 1, 2022, plaintiff filed a motion seeking a 90-day extension of the deadlines set forth in the Scheduling and Case Management Order. See Doc. #86. The Court granted that motion, in part, and, as relevant here, extended the deadline for the filing of early dispositive motions to March 16, 2022. See Doc. #87.

On March 15, 2022, McPherson filed a motion for summary judgment limited to the issue of exhaustion. See Doc. #108. On March 21, 2022, plaintiff filed a motion for extension of time to respond to McPherson's motion, which the Court granted, in part, to May 6, 2022. See Docs. #117, #121. On May 11, 2022, plaintiff filed both an opposition to McPherson's motion for summary judgment and a second motion for extension of time to respond to McPherson's motion. See Docs. #140, #141. The motion for extension of time requested additional time to file a response because plaintiff was waiting for the production of additional documents to oppose summary judgment. See Doc. #140 at 2. The Court granted plaintiff's motion for extension of time, in part, and permitted plaintiff to "file an additional response to the motion for summary judgment on or before May 26, 2022." Doc. #142 (emphasis removed). Plaintiff filed an additional memorandum in opposition to the motion for summary

4

judgment on May 13, 2022. See Doc. #146.[2] McPherson filed a reply

brief on June 9, 2022. See Doc. #160.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). "The party seeking summary judgment has the burden to

demonstrate that no genuine issue of material fact exists."

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir.

2002). The moving party may discharge this burden by "pointing

out to the district court ... that there is an absence of

evidence to support the nonmoving party's case." Celotex Corp.

v. Catrett, 477 U.S. 317, 325 (1986).

In deciding a motion for summary judgment, the Court "must

construe the facts in the light most favorable to the non-moving

party and must resolve all ambiguities and draw all reasonable

inferences against the movant." Beyer v. Cty. of Nassau, 524

F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks

omitted). "If there is any evidence in the record that could

reasonably support a jury's verdict for the non-moving party,

---

[2] The arguments set forth in Mr. Cunningham's second opposition
are largely repetitive of those set forth in his initial
opposition. Although the Court has reviewed both filings, the
Court cites primarily to the second filed opposition, located at
docket entry number 146.

summary judgment must be denied." <u>Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH</u>, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"[I]n a <u>pro</u> <u>se</u> case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers. ... This liberal standard, however, does not excuse a <u>pro</u> <u>se</u> litigant from following the procedural formalities of summary judgment." <u>Govan v. Campbell</u>, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations and quotation marks omitted). A plaintiff's "<u>pro</u> <u>se</u> status d[oes] not eliminate his obligation to support his claims with some evidence to survive summary judgment." <u>Nguedi v. Fed. Reserve Bank of N.Y.</u>, 813 F. App'x 616, 618 (2d Cir.), <u>cert. denied</u>, 141 S. Ct. 825 (2020). "[A] <u>pro</u> <u>se</u> party's bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." <u>Hamilton v. Gen. Motors Hourly-Rate Employee's Pension Plan</u>, 101 F. Supp. 3d 202, 209 (N.D.N.Y. 2015) (citation and quotation marks omitted).

Pursuant to the District of Connecticut Local Rules:

A party opposing a motion for summary judgment **shall** file and serve with the opposition papers a document entitled "Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment," which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal

Rule of Civil Procedure 56(c).

D. Conn. L. Civ. R. 56(a)(2)(i) (emphasis added). When a party
fails to controvert a fact set forth in the opposing party's
Local Rule 56(a)(1) statement, it will be deemed admitted if it
is "supported by the evidence[.]" D. Conn. L. Civ. R. 56(a)(1).

## III. <u>FACTUAL BACKGROUND</u>[3]

The following facts are derived from the parties'
submissions pursuant to Local Rule 56(a) and the affidavits and
exhibits attached thereto.

As required, in conjunction with her motion for summary
judgment, McPherson provided the Local Rule 56(b) Notice to
Self-Represented Litigant Regarding Summary Judgment, a copy of
Local Rule 56, and a copy of Federal Rule 56, to plaintiff. <u>See</u>
Doc. #108-4. Despite this Notice, which explicitly informed
plaintiff that he was required to "respond to specific facts the
movant claims are undisputed (see Local Rule 56(a)(2))" and to
"support [his] claims with specific references to evidence[,]"
Doc. #108-4 at 2, plaintiff generally has not complied with
those requirements.[4]

_____

[3] The Court includes here only the facts relevant to the sole
federal claim remaining against McPherson.

[4] On March 24, 2022, the Court entered an Order cautioning:
"Should plaintiff fail to respond to defendant McPherson's
motion, each material fact set forth in the Local Rule 56(a)1
Statement and supported by the evidence will be deemed admitted

Plaintiff has filed a document entitled "Plaintiff's opposition to local Rule 56a statement of undisputed material facts[.]" Doc. #146-1 at 1 (sic). Most of plaintiff's responses to McPherson's Local Rule 56(a) statement fail to include the required citation to admissible evidence. See generally id. at 1-9. Plaintiff also has attached a copy of McPherson's Local Rule 56(a) Statement with annotations stating his disagreement with some asserted facts, but again with no citations to admissible evidence in support of his position. See Doc. #146-1 at 17-26.

Plaintiff was provided ample notice of the requirement to file a Local Rule 56(a)(2) statement with his response to defendant's motion for summary judgment. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) ("[T]he Court extends special solicitude to the pro se litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." (emphasis added)); Wu v. Nat'l Geospatial Intel. Agency, No. 3:14CV01603(DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that the self-represented plaintiff "was advised on two

---

(solely for purposes of the motion). Thus, if plaintiff does not file a response, the Court will consider the supported facts set forth in McPherson's Local Rule 56(a)(1) Statement to be admitted as true." Doc. #121 (citations and quotation marks omitted).

8

separate occasions of the need to comply with Local Rule 56 and specifically of the need to file a Local Rule 56(a)2 Statement" but had failed to do so, and therefore deeming the statements in the movant's Statement of Undisputed Facts admitted).

"[T]o the extent that [McPherson's] factual assertions are properly supported by the evidence the Court will deem those assertions admitted." Wu, 2017 WL 923906, at *2 (emphasis added); see also Otero v. Purdy, No. 3:19CV01688(VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) ("deem[ing] Defendants' 56(a)1 statements to be admitted as they are properly supported by the evidence[]" and the self-represented plaintiff did not file a Local Rule 56(a)(2) statement). However, if a fact is refuted by "Plaintiff's opposition to local Rule 56a statement of undisputed material facts[,]" or his response to the motion for summary judgment, the Court will consider that fact disputed. See, e.g., Wilks, 507 F. Supp. 2d at 185-86 ("For the purposes of this motion, however, the court shall deem admitted all facts set forth in the Defendant's compliant Local Rule 56(a)(1) Statement that are supported by the evidence and not refuted by the Plaintiff's opposition memorandum."). Accordingly, the Court will deem all facts in McPherson's Local Rule 56(a)(1) statement that are supported by the evidence admitted, unless plaintiff's submissions directly

contradict them. If a fact is disputed, the Court will consider the evidence provided by the parties to determine whether the dispute is genuine.

A.   DOC Health Services Review Procedure

Inmates incarcerated at Connecticut DOC facilities have access to the Health Services Review Policy outlined in Administrative Directive 8.9 ("A.D. 8.9"). See Doc. #164-1.[5]

A.D. 8.9 provides:

> The Department of Correction shall establish a Health Services Review procedure as the administrative remedy for all health services to enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment. Review of health care services enables the Department to identify individual and

_____

[5] A.D. 8.9 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 9.6: Inmate Administrative Remedies, 6-9 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf. Plaintiff attaches to his opposition, and relies on, the revised version of A.D. 8.9, which bears an effective date of April 30, 2021. See Doc. #146-1 at 28-36. However, plaintiff admits that defendant McPherson did not treat him any time at or after April 30, 2021. See id. at 9. Accordingly, the Court ordered counsel for defendant McPherson to file a copy of A.D. "8.9 that was in effect at the time of defendant McPherson's alleged treatment of plaintiff." Doc. #163. Defendant McPherson filed that document as directed; it reflects that it was in effect from July 24, 2012, through April 29, 2021. See Doc. #164 at 1. The version of A.D. 8.9 filed by defendant, which was in effect at the time of plaintiff's allegations against McPherson, controls the issue of exhaustion currently before the Court. Plaintiff could not have possibly complied with an administrative directive that was not in effect, or even in existence, at the time he filed the Health Services Review. All references to A.D. 8.9 throughout this Ruling refer to the version that was in effect from July 24, 2012, through April 29, 2021. See id.

> systemic problems, to resolve health care issues in a timely manner and to facilitate the accomplishment of its mission.

Doc. #164-1 at 1.

"There are two types of Health Services Review[.]" Id. at 2. The first type addresses "Diagnosis and Treatment[,]" which refers to "[a] review of diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate." Id. at 3. The second type addresses "Review of an Administrative Issue[]" which refers to "[a] review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Id.[6]

An "inmate must attempt to seek an informal resolution prior to filing for a Health Services Review." Id. An inmate "must attempt" informal resolution "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." Id. Prison staff "shall" respond "within 15 calendar days from receipt of the written request." Id.

---

[6] Because plaintiff sought review of diagnosis or treatment, the Court does not further address the second type of Health Services Review.

11

       1.   *Review of a Diagnosis or Treatment*

An inmate seeking review of diagnosis or treatment "may apply for a Health Services Review if informal resolution via inmate request was unsuccessful. By utilizing CN 9602 Inmate Administrative Remedy form an inmate shall check the 'Diagnosis/Treatment' box and explain concisely the cause of his/her dissatisfaction, and deposit the completed form in the Health Services Remedies/Review box." Doc. #164-1 at 3.

"A properly submitted request for Review of a Medical Decision shall be handled according to" the procedures set forth in A.D. 8.9(11). Id. "Upon receipt of CN 9602, Inmate Administrative Remedy Form, the HSR Coordinator shall schedule a Health Services Review Appointment (HSRA) with a physician, ... as soon as possible and at no cost to the inmate, to determine what action, if any, should be taken. If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the health services review." Id. Notification of this decision "shall" be provided to the inmate "in writing within ten (10) business days by indicating 'No Further Action' in the disposition field of CN 9602, Inmate Administrative Remedy Form." Id.

However, "[i]f the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act

12

on his/her decision; or, (2) refer the case to the Utilization Review Committee for authorization by indicating 'Change of Treatment' or 'Referred to URC', as appropriate, in the disposition field of CN 9602, Inmate Administrative Remedy Form." Doc. #164-1 at 3.

   *2.   Records*

The "HSR Coordinator" maintains "[a] log of each Health Services Review request and appeal[.]" Id. at 4. The HSR Coordinator also maintains "[a] file of each Health Services Review request and appeal ..., containing copies of the forms that have been used in the review or appeal." Id. For any inmate "who has applied for a Review of Diagnosis or Treatment[,]" the "health record" of that inmate must "contain a copy of the forms used in the Review, notations in the clinical record including a notation of 'HSR Administrative Remedy' appointment." Id. (sic).

B.   Events Underlying the Complaint and Motion for Summary Judgment

On November 29, 2019, plaintiff, who is diabetic, received notice that his A1C levels had increased to 10.4%, from the prior levels of 7.6%. See Doc. #108-2 at 1, ¶1. At this time, McPherson had been treating plaintiff for several medical conditions for approximately eight months. See id. at 1, ¶2.

On December 17, 2019, plaintiff submitted an Inmate Request Form stating: "I am not getting proper types of insulin ...

Chena McPherson refuses to answer email alerts to my diabetic problems to fix or add medications[.]" Doc. #146-2 at 117. On January 21, 2020, RCOO Shea responded that she had "checked [plaintiff's chart] and see consistent blood sugars daily from nursing. I will assure your provider is aware of the values." Id. at 118.

On January 9, 2020, plaintiff submitted an Inmate Request Form requesting an increase in his Lantus. See id. at 97. APRN Stork responded on January 15, 2020, stating that plaintiff's Lantus had been increased, and directed plaintiff to continue to monitor his blood sugar levels. See id.

On January 15, 2020, plaintiff submitted an Inmate Request Form stating that his "sugar is still in the high 200 to high 300 plus need more insulin before I loose my feet[.]" Id. at 96 (sic). The response to this request, dated January 19, 2020, stated: "Previous nurse put in request for your sugar levels to be evaluated." Id.

On January 24, 2020, plaintiff submitted an Inmate Request Form regarding his increased A1C levels. See Doc. #108-2 at 1, ¶3; see also Doc. #146-2 at 104. Defendant Shea responded on February 25, 2020, that McPherson "is aware of your condition and is monitoring you appropriately." Doc. #146-2 at 105; see also Doc. #108-2 at 1, ¶3.

14

Plaintiff submitted another Inmate Request Form on January 24, 2020, to "Dep Warden Snyder" complaining that he "still have not been seen by ARPN Chena McPherson she keeps canceling my appointments my conditions are life threatening[.]" Doc. #146-2 at 110 (sic). This was responded to on February 17, 2020. See id. The substance of the response is unclear. See id.

On January 26, 2020, plaintiff submitted an Inmate Request Form regarding his A1C levels to "SAL Diaz[,]" stating, inter alia, that "McPherson has failed for 1 year has not prescribed insulin for almost a year[.]" Id. at 107 (sic).[7] A response stated: "1/30/2020 Talked [with] Tawanna F inmate being treated and [followed-up with] provider. He is not happy [with] providers decision. Care seem appropriate[.]" Id. (sic).

On February 17, 2020, plaintiff submitted an Inmate Request Form to Nurse John Ostheimer, complaining of potential damage to his health caused by McPherson "not putting me on insulin[.]" Id. at 93. The response to this request, dated March 6, 2020,

---

[7] Plaintiff submitted an Inmate Request Form on January 26, 2020, to "MHU" stating: "Im losing my mind fighting with medical for Insulin ... No one will listen Im going to lose my feet or die." Doc. #146-2 at 91 (sic). This was responded to on January 31, 2020. See id. The substance of the response is unclear. An additional Inmate Request Form was submitted on January 26, 2020, to the "Warden" stating: "Im in trouble of losing my life or limb medical is refusing to effectively treat my newly diagnosed diabetes[.]" Id. at 112 (sic). This was responded to on January 28, 2020, with the inquiry: "Did you not have a follow up appt." Id. (sic).

stated, in relevant part: "Your Lantus was just increased. ...
You have a Endocrinology waiting to schedule[.]" Doc. #146-2 at
93 (sic).

On February 19, 2020, plaintiff submitted an Inmate Request
Form to McPherson stating: "I need more insulin now." Id. at
114. McPherson responded by affixing a sticker to the request,
which directed plaintiff to "sign up for PromptCare[.]" Id.

On March 12, 2020, plaintiff submitted an Inmate Request
form to McPherson asking: "Why has no one bothered to check to
see if my pancreas is working or get expedited appointment with
endocrinologist[.]" Id. at 130 (sic). A response dated March 17,
2020, stated: "You have an order to see your provider. You may
discuss your chronic issues at your time of appointment." Id.

On March 29, 2020, plaintiff submitted an Inmate Request
Form to McPherson requesting to be seen for his diabetic
symptoms. See Doc. #108-1 at 1, ¶4; see also Doc. #146-2 at 88
("Im holding water Im always thirsty ... Please check kidney
function again." (sic)). McPherson responded by affixing a
sticker to the request, which directed plaintiff to "sign up for
PromptCare[.]" Doc. #146-2 at 88; see also Doc. #108-2 at 2, ¶5.

On April 29, 2020, plaintiff submitted a request for a
Health Services Review ("HSR"). See Doc. #108-2 at 2, ¶6; see
also Doc. #109 at 15-16. Plaintiff stated that he had "[b]een to

16

prompt care several times" and complained of foot pain he
attributed to "high sugar #s." Doc. #109 at 16 (sic); see also
Doc. #108-2 at 2, ¶6. Plaintiff requested a prescription for
"more insulin" and "Aspirin 325 mg x2 QID so we can slow/stop
the damaged pain caused by thick blood levels due to high sugar
levels." Doc. #109 at 16 (sic); see also Doc. #108-2 at 2, ¶6.
Plaintiff claimed that the aspirin "helps my high blood sugar
blood thin enough to pass through veins." Doc. #109 at 16 (sic);
see also Doc. #108-2 at 2, ¶6.

On May 18, 2020, the HSR was returned without disposition.
See Doc. #108-2 at 2, ¶7; see also Doc. #109 at 16. The reason
provided for the return states: "Mr. Cunningham if you went to
prompt care then you are on the provider list. Please allow
ample scheduling time." Doc. #109 at 16; see also Doc. #108-2 at
2, ¶7.

On May 2, 2020, while the above HSR was under review,
plaintiff submitted an Inmate Request Form to McPherson. See
Doc. #108-2 at 2, ¶8; see also Doc. #109 at 7. Plaintiff
asserted that McPherson was ignoring his "severe pain and high
sugar levels." Doc. #109 at 7; see also Doc. #108-2 at 2, ¶8.
There is no record of a response to this Inmate Request Form or
a re-filed HSR on this issue. See Doc. #108-2 at 3, ¶9.

Plaintiff was assigned a new medical provider on May 28,

17

2020. <u>See</u> Doc. #146-1 at 9, ¶4.[8]

## IV.   **DISCUSSION**

### A.   <u>Applicable Law</u>

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). "The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Johnson v. Testman</u>, 380 F.3d 691, 697 (2d Cir. 2004) (citation and quotation marks omitted).

---

[8] Plaintiff attaches to his second opposition several Inmate Request Forms applicable to the treatment of his diabetes during the timeframe at issue. <u>See, e.g.</u>, Doc. #146-2 at 93, 96-97, 107, 110, 114, 117-18, 130. The Court has discussed the relevant forms in this factual background section. McPherson represents that these documents were not produced prior to the filing of plaintiff's second opposition, and nevertheless, "do not demonstrate appropriate exhaustion." Doc. #160 at 9. Although the Court is concerned that McPherson did not have access to these documents, it does not appear that possession of these documents would have substantively changed her exhaustion argument.

"The Supreme Court has held that the PLRA exhaustion requirement requires proper exhaustion. That is, prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (citations and quotation marks omitted); accord Jones v. Bock, 549 U.S. 199, 218 (2007) (The PLRA requires "proper exhaustion[.]"). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006); see also Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory — unexhausted claims may not be pursued in federal court." Amador, 655 F.3d at 96.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007); see also Day v. Chaplin, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (plaintiff failed to exhaust administrative remedies because informal letters sent to prison officials did "not conform to

19

the proper administrative remedy procedures established by the"
DOC).

Exhaustion of administrative remedies is an affirmative
defense. See Jones, 549 U.S. at 216. McPherson "bear[s] the
burden of proving that the plaintiff did not exhaust his
administrative remedies[.]" Guarneri v. West, 782 F. Supp. 2d
51, 59 (W.D.N.Y. 2011) (citation and quotation marks
omitted), aff'd, 495 F. App'x 142 (2d Cir. 2012).

B.   Analysis

McPherson asserts that "plaintiff did not go through the
appropriate administrative remedy process." Doc. #108-1 at 12.
Specifically, McPherson contends that plaintiff failed to
exhaust his administrative remedies because: (1) "none of the
Health Services Reviews submitted by the plaintiff mention Ms.
McPherson[,]" Doc. #108-1 at 13; (2) the HSR "does not reflect
... an attempt at an informal resolution with Ms. McPherson[,]"
Id. at 14; and (3) "plaintiff failed to appeal." Id.

It is undisputed that the version of A.D. 8.9 bearing the
effective date of July 24, 2012, applies to plaintiff's claims.[9]

_____

[9] McPherson also refers to A.D. 9.6 in her briefing. A.D. 8.9,
however, is the process applicable to claims against medical
staff like McPherson. See, e.g., Carter v. Revine, No.
3:14CV01553(VLB), 2017 WL 2111594, at *14 (D. Conn. May 15,
2017) ("The Court agrees with the Defendants that only
Directive 8.9 applies to Carter's claims against medical
staff."); Durham v. Hanna, No. 3:19CV00190(KAD), 2020 WL

Compare Doc. #164-1 at 1, with Doc. #146-1 at 28. McPherson
treated plaintiff from approximately March 2019 until May 28,
2020, and plaintiff's remaining claim against her relates to the
treatment of plaintiff's diabetes. See Doc. #146 at 6; Doc.
#108-2 at 1, ¶2. Thus, the Court considers only the
administrative remedies that relate to treatment for diabetes
within that time period.

    One HSR of record appears applicable to treatment of
plaintiff's diabetes for the relevant time period. See Doc.
#109, at 15-16. The HSR is dated April 29, 2020, and requests a
Health Services Review for "Diagnosis/Treatment[.]" Id. at 15.
As McPherson notes, the HSR does not explicitly name her. See
Doc. #108-1 at 13. This, however, is not dispositive to the
Court's analysis because "exhaustion is not per se inadequate
simply because an individual later sued was not named in the
grievances." Papantoniou v. Naqvi, No. 3:19CV01996(KAD), 2021 WL
4224587, at *9 (D. Conn. Sept. 16, 2021) (citation and quotation
marks omitted). Plaintiff acknowledges that the HSR "did not
mention McPherson[,]" but asserts, that "you don't have to put

---

4586688, at *6 (D. Conn. Aug. 10, 2020) ("Prior to filing this
action on February 7, 2019, Durham was obligated to exhaust his
administrative remedies under Administrative Directive 8.9 with
respect to his claims against [medical staff]; and under
Administrative Directive 9.6 with respect to his claims against
custody staff[.]"). Thus, the Court considers whether plaintiff
exhausted his administrative remedies under A.D. 8.9.

name of provider you only have one provider noted by (DOC)

Records and guidelines every one in medical knows this." Doc.

#146-1 at 4 (sic).[10] The record also reflects many Inmate Request

Forms filed <u>before</u> that HSR explicitly naming McPherson and her

alleged treatment, or lack thereof, of plaintiff's diabetes.

<u>See, e.g.,</u> Doc. #146-2 at 88, 93, 104, 107, 110, 114.

Accordingly, there is a genuine issue of material fact as to

whether the HSR was sufficient to put McPherson on notice of

plaintiff's concerns and asserted needs.

McPherson next contends that the HSR "does not reflect ...

an attempt at an informal resolution with Ms. McPherson[.]" Doc.

#108-1 at 14. Section 1 of the Inmate Administrative Remedy Form

(CN 9602) directs the inmate to "SELECT ADMINISTRATIVE REMEDY A,

B, OR C BELOW." Doc. #109 at 15 (sic). Section A states "I am

filing a Grievance" and instructs:

- Prior to filing a grievance, you must attempt informal resolution.
- Attach a copy of CN 9601, Inmate Request Form with the staff member's response **OR** state in Section 4 the reason why the form is not attached.
- Grievances must be filed within 30 days of the occurrence or discovery of the cause of the grievance.

<u>Id.</u> By contrast, Section B states: "I am requesting a Health

Services Review[,]" and provides the inmate with the option of

---

[10] This assertion is "sworn" under the "penalty of perjury[.]"
Doc. #146-1 at 9.

selecting "All Other Health Care Issues" or

"Diagnosis/Treatment[.]" Id. Mr. Cunningham checked the box in

Section B stating that he was "Requesting a Health Services

Review" of "Diagnosis/Treatment[.]" Id.

Section B of the Inmate Administrative Remedy Form (CN

9602) does not require that an inmate attach a copy of an Inmate

Request Form (CN 9601), or explain why the form is not attached:



Doc. #109 at 15. That requirement is applicable only to Section

A grievances.

Additionally, and importantly, the version of A.D. 8.9 in

effect at the time plaintiff filed the HSR does not require that

an inmate attach a copy of the Inmate Request Form (CN 9601), or

explain why the form is not attached.[11] See Doc. #164-1 at 3; see

also Saidock v. Carrington-McClain, No. 3:19CV01319(KAD), 2020

WL 2523286, at *6 (D. Conn. May 18, 2020) ("[A]ttachment of the

_____

[11] The applicable version of A.D. 8.9(11) does not have a time
limitation for the filing of a Health Services Review. See
generally Doc. #164-1 at 3-4. This further supports a finding
that the requirement to attach a copy of an Inmate Request Form
applies only to grievances filed pursuant to Section A of the
Inmate Administrative Remedy Form.

CN 9601 is not required when filing a Health Services Review pursuant to Administrative Directive 8.9."). As previously stated, there are several Inmate Request Forms reflecting that plaintiff had attempted an informal resolution of his diabetes-related complaints with McPherson. Accordingly, there is a genuine issue of material fact as to whether plaintiff attempted an informal resolution within the meaning of A.D. 8.9.

Finally, relying on A.D. 8.9(12), McPherson contends that plaintiff did not exhaust his administrative remedies because he did not file an appeal. See Doc. #108-1 at 14. Plaintiff did not file his HSR pursuant to A.D. 8.9(12), which applies to "Review of an Administrative Issue." Doc. #164-1 at 4. Rather, plaintiff filed his HSR pursuant to 8.9(11), which applies to "Review of a Diagnosis or Treatment." Id. at 3; see also Doc. #109 at 15. The applicable (now superseded) version of A.D. 8.9(11), unlike A.D. 8.9(12), did not require an appeal to exhaust administrative remedies. See Doc. #164-1 at 3-4. McPherson's argument on this point is therefore without merit.

V.   **CONCLUSION**

Thus, for the reasons stated, McPherson's Motion for Summary Judgment [**Doc. #108**] is **DENIED.**

**Counsel for McPherson shall participate in the August 19, 2022, Zoom discovery status conference to further discuss the**

**Scheduling and Case Management Order in light of this Ruling.**

<u>**See**</u> **Doc. #173.**

It is so ordered this 28th day of July, 2022, at

Bridgeport, Connecticut.

```
_____/s/_____
Sarah A. L. Merriam
United States District Judge
```